IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| GAETANA PATRICIA WELSH | * | |
| | * | |
| v. | * | Civil Case No. JKB-14-3891 |
| | * | |
| COMMISSIONER, SOCIAL SECURITY | * | |
| | * | |
| ************ | | |

## REPORT AND RECOMMENDATIONS

Pursuant to Standing Order 2014–01, the above-captioned case has been referred to me to review the parties' dispositive motions and to make recommendations pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 301.5(b)(ix). I have considered both parties' dispositive motions, and Ms. Welsh's reply. [ECF Nos. 12, 13, 16]. I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2014). This Court must uphold the decision of the Agency if it is supported by substantial evidence and if the Agency employed proper legal standards. 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). For the reasons set forth below, I recommend that Ms. Welsh's motion be denied, the Commissioner's motion be denied, the decision of the Commissioner be reversed in part, and the case be remanded pursuant to sentence four of 42 U.S.C. § 405(g).

Ms. Welsh filed an application for Disability Insurance Benefits ("DIB") in September, 2011. (Tr. 157-58). Her application was denied initially and on reconsideration. (Tr. 90-92, 95-96). An Administrative Law Judge ("ALJ") held a hearing on April 30, 2014. (Tr. 28-70). Following the hearing, the ALJ determined that Ms. Welsh was not disabled within the meaning of the Social Security Act during the relevant time frame. (Tr. 10-27). The Appeals Council denied Ms. Welsh's request for review, (Tr. 1-5), so the ALJ's decision constitutes the final, reviewable decision of the Agency.

The ALJ found that Ms. Welsh suffered from the severe impairments of ulcerative colitis, migraines, and "right-sided sciatica, status post discectomy surgery." (Tr. 16). Despite these impairments, the ALJ determined that Ms. Welsh retained the residual functional capacity ("RFC") to

> perform a range of medium work as defined in 20 CFR 404.1567(c). She can lift and carry no more than 50 pounds occasionally and 25 pounds frequently; stand and walk for no more than 6 hours in an 8-hour workday; sit for no more than 6 hours in an 8-hour workday; occasionally push and pull; occasionally crawl and climb ramps and stairs; frequently balance, kneel, stoop, and crouch; should avoid concentrated exposure to hazardous machinery, unprotected heights, climbing of ladders, ropes, or scaffolds, and work on vibrating surfaces; should not be exposed to excessively loud background noise, such as jackhammers or heavy traffic in the immediate work environment; and would need 1 to 2 bathroom breaks outside of the normal breaks and lunch period, with each break lasting no more than 5 minutes each.

(Tr. 17). After considering the testimony of a vocational expert ("VE"), the ALJ determined that Ms. Welsh could perform past relevant work as a waitress, kitchen helper, bartender, hostess, and rent/billing collector. (Tr. 22). Therefore, the ALJ concluded, Ms. Welsh was not disabled. *Id.*

Ms. Welsh disagrees. She raises five issues on appeal: (1) that the ALJ failed to include any limitations relating to her migraines in her RFC assessment; (2) that the ALJ did not adequately support the finding regarding her need for restroom breaks; (3) that the ALJ assigned inadequate weight to the opinions of her treating physicians; (4) that the ALJ erred in not ordering a gastroenterology consultative examination; and (5) that the ALJ's RFC assessment did not account for her compromised immune system. While most of her arguments lack merit, I concur that the ALJ did not adequately support the RFC assessment as to the number and duration of required bathroom breaks. Accordingly, I recommend remand. In so recommending, I express no opinion as to whether the ALJ's ultimate conclusion that Ms. Welsh is not entitled to benefits is correct or incorrect.

Beginning with the unsuccessful arguments, Ms. Welsh contends that the ALJ failed to include limitations relating to her migraine headaches in her RFC assessment. Pl. Mot. 5-7. While Ms. Welsh concedes that the RFC assessment included restrictions designed to prevent migraines (such as no excessively loud background noise), she posits that the migraines would cause excessive absences from the workplace. Pl. Mot. 7. In the discussion of Ms. Welsh's migraines, the ALJ noted that Ms. Welsh had declined to use medications that had proved helpful, such as Relpax (at times) and Amitriptyline. (Tr. 19). The ALJ further noted that Ms. Welsh's neurological treatment records documented normal examinations. (Tr. 21). Finally, and most significantly, the ALJ noted that Ms. Welsh maintained an ability to work "at least part-time" as a waitress and to care for her elderly parents, which contradicted her allegations of debilitating limitations. (Tr. 20). The record reflects that Ms. Welsh began colitis treatment with Remicade, which she alleged to be a migraine trigger, in early 2011 and continued working full-time as a waitress through most of that year. That history provided substantial support for the ALJ's conclusion that Ms. Welsh's migraines did not cause work-preclusive absenteeism.[1]

Ms. Welsh further contends that the ALJ assigned inadequate weight to the opinions of her treating physician, Dr. Harris, and a certified registered nurse practitioner (CRNP), Julia Smith. Pl. Mot. 11-14. Dr. Harris's opinion is extraordinarily conclusory, stating only, "Please be advised that I have reviewed Listing 5.06 subsections 5 and 6 as well as Listing 5.08. Based on my treatment, examinations and medical records Ms. Welsh meets these sections." (Tr. 412).

---

[1] The record is unclear as to the extent Ms. Welsh continued to work in the years after 2011. Certainly, her wages showed a significant drop-off in late 2011 into 2012, leading to the ALJ's conclusion that she had not engaged in substantial gainful activity after her alleged onset date. (Tr. 15). In fact, Ms. Welsh changed employers around that time and testified that she worked only on a part-time basis whenever she was able to come in, which is consistent with the lower wage amounts. (Tr. 37). However, there is some suggestion in the records that Ms. Welsh continued to work extensively during those later years. *See* (Tr. 362) (August, 2012 report stating, "She works 12-16 hours five to six days a week."). It is unclear whether the discrepancy results from confusion, the payment system of the new employer, or some other explanation, but the ALJ might explore the issue on remand to determine any effect on Ms. Welsh's eligibility for benefits.

In contrast, the ALJ provided a thorough explanation of the reasons why Ms. Welsh does not meet the criteria of either Listing 5.06 or Listing 5.08. (Tr. 16-17). Thus, the ALJ did not err in assigning "little weight" to Dr. Harris's unsupported opinion. With respect to the opinion authored by the CNRP, Ms. Smith, that opinion again provides little information about functional limitations, with the exception of an assertion that Ms. Welsh has to limit her food intake while working. (Tr. 411). The ALJ specifically considered and assigned "limited weight" to Ms. Smith's opinion, noting that Ms. Smith is not an acceptable medical source, did not offer a function-by-function assessment of Ms. Welsh's capabilities, referred to a cervical spine impairment that was not otherwise evidenced in the medical records, and referenced weight loss that predated the alleged onset of disability. (Tr. 21-22). Thus, the ALJ provided substantial evidence to support her assignments of weight to the opinions of the treating sources.

Ms. Welsh also contends that the ALJ had an obligation to order a gastrointestinal consultative examination. Pl. Mot. 14-15. Regulations provide that a consultative examination may be purchased where the ALJ lacks sufficient evidence to reach a conclusion about disability. *See* 20 C.F.R. § 404.1519a(a). With the possible exception of the RFC provision discussed below, the ALJ's opinion does not reflect an absence of sufficient medical information to permit a decision to be made. Accordingly, there was no requirement that the ALJ order a consultative examination to develop an adequate medical record. However, on remand, the ALJ may of course procure a consultative examination if the ALJ believes such an examination would be helpful.

Finally, for the first time in her reply, Ms. Welsh argues that a side effect of Remicade is a lowered immune system, resulting in persistent urinary tract infections. Pl. Reply at 8-10. She contends that the ALJ therefore should have included environmental restrictions pertaining to temperature, fumes, dust, ventilation, and contact with the public. *Id.* However, while the

medical records refer generally to increased susceptibility to colds and viruses, there is no evidence that Ms. Welsh received treatment for any significant number of such ailments, nor is there evidence tying her persistent urinary tract infections to her use of Remicade. Moreover, the ALJ expressly considered Ms. Welsh's history of urinary tract infections, and found it to be non-severe as "it causes no more than minimal work-related limitations." (Tr. 16). The decision not to include an RFC restriction regarding contact with the general public was supported by the evidence in the case, including evidence that Ms. Welsh worked, at least part-time, as a waitress throughout most of her alleged period of disability. Thus, the environmental restrictions proposed by Ms. Welsh were not supported by the record.

However, Ms. Welsh successfully argues that the ALJ lacked substantial evidentiary support for the conclusion that she would require only "1 to 2 bathroom breaks outside of the normal breaks and lunch period, with each break lasting no more than 5 minutes each." (Tr. 17). Ms. Welsh correctly notes that there is no medical evidence, outside of her own reports, as to the duration or frequency of her trips to the bathroom. It is clear that the ALJ did not believe Ms. Welsh's description of her limitations. *See* (Tr. 20-21) (credibility findings citing (1) the inconsistency between Ms. Welsh's activities, including part time work and care for her parents, and her reports that she could not leave her house for more than an hour; (2) the inconsistency between her testimony that she was unable to eat for two days before leaving the house, and the relative stability in her weight during the relevant time frame; and (3) the "dubious" testimony regarding her inability to drink water without aggravating her condition). However, the ALJ provided no explanation for the basis for her determination that two additional five minute breaks would suffice to permit Ms. Welsh to perform substantial gainful employment. No such basis is evident from the record, either from medical providers or from other evidence regarding Ms. Welsh's employment history. Moreover, it is clear from the VE's testimony that the number

and duration of bathroom breaks could be critical to Ms. Welsh's ability to perform her past relevant work. *See, e.g.,* (Tr. 64) ("If it were only five minutes, once again I would say, you know if it were two extra breaks at five minutes, those jobs could likely be done. But extending beyond that –"). Therefore, on remand, the ALJ should fulfill her duty of explanation as to the RFC assessment by citing to appropriate evidentiary support for her conclusion.

**CONCLUSION**

For the reasons set forth above, I respectfully recommend that:

1. The Court DENY Plaintiff's Motion for Summary Judgment [ECF No. 12];

2. the Court DENY Defendant's Motion for Summary Judgment [ECF No. 13];

3. REVERSE IN PART the decision of the Commissioner;

4. REMAND the case to the Commissioner under sentence four of 42 U.S.C. § 405(g) for further proceedings in accordance with this Report and Recommendations; and

5. order the Clerk to CLOSE this case.

Any objections to this Report and Recommendations must be served and filed within fourteen (14) days, pursuant to Federal Rule of Civil Procedure 72(b) and Local Rule 301.5(b).

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a *de novo* review of the determinations contained in the report and such failure shall bar you from challenging on appeal the findings and conclusions accepted and adopted by the District Judge, except upon grounds of plain error.

Dated:  September 4, 2015                                        /s/
                                                                                 Stephanie A. Gallagher
                                                                                 United States Magistrate Judge